IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Cr. No. 05-188 (HHK) |
| NOEL DOYE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF.**

Defendant, Noel Doye, through undersigned counsel, respectfully submits this Supplemental Motion to Suppress Evidence pursuant to the Court's order of February 24, 2006. This motion is made pursuant to Fed. R. Crim. P. 12(b)(3), and is supported by the discussion below.

**FACTS**

**A. Government's Evidence**

The government called two police officers as witnesses in the motions hearings held in the above-captioned case. On October 11, 2005, the government called George Young as a witness; on February 24, 2006, Officer Marcus Stevens took the stand. Officer Young testified about the stop of the vehicle Mr. Doye was driving, while Officer Stevens testified about the pat-down frisk

1

that he conducted following the stop.  The events at issue in this case occurred in front of 4219 4th Street, SE at approximately 10:50 p.m. on May 4, 2005.

Officer Young testified that, on the night of May 4, he was on routine patrol with Officers Stevens and Peake (Tr. 10/11/05 at 12). While approaching an apartment building located at 4219 4th Street, SE, he and the other officers observed a blue, four-door Dodge Intrepid in the parking lot. Officer Young testified that he and the other officers noticed the vehicle because the driver's side door had a "punched door lock" (Tr. 10/11/05 at 12). As officers approached the vehicle, Mr. Doye, the driver, started the vehicle and attempted to pull off.  At that point, officers stopped their scout car in front of the Dodge and observed two of the rear passengers making "stuffing movements" (Tr. 10/11/05 at 13) Officers Stevens and Young indicated to Mr. Doye to turn the vehicle off and he complied. Officer Stevens asked Mr. Doye to exit the vehicle and, once again, he complied (Tr. 10/11/05 at 13). Officer Stevens then proceeded to frisk Mr. Doye for weapons. Officer Young testified that Officer Stevens "constantly was patting [Mr. Doye] down" (Tr. 10/11/05 at 16). Upon discovering that there were no weapons-or, for that matter, objects that could reasonably have been used as weapons-on Mr. Doye's person, Officer Stevens continued to feel Mr. Doye's left pants pocket-"squeezing" and "sliding" the contents of the pocket

as he did so.[1] Officer Stevens testified that the contents of Mr. Doye's pockets felt like a "hackey sack." Specifically, he indicated that he felt "small" and "soft" "pea-sized" objects within the pocket. At some point, Officer Stevens asked Mr. Doye what was in his pocket and Mr. Doye remained silent. Suspecting that Mr. Doye's left pant pocket contained crack cocaine, Officer Stevens placed his hand inside Mr. Doye's left pocket and retrieved the contents from within. The search of Mr. Doye allegedly revealed approximately 14 grams of crack cocaine. Mr. Doye was placed under arrest.

## DISCUSSION

**I.   THE PHYSICAL EVIDENCE MUST BE SUPPRESSED AS THE TAINTED FRUIT OF AN ILLEGAL SEARCH**

In Mr. Doye's Motion to Suppress Evidence, he argued that his warrantless stop and seizure were unlawful and that there was no probable cause to support his arrest. Following the motions hearing held on October 11, 2005, undersigned counsel argued that (1) the police lacked the probable cause or reasonable suspicion necessary to stop the vehicle Mr. Doye was driving; that (2)

---

[1] The portion of this memorandum addressing Officer Steven's testimony is based on counsel's recollection. Counsel requested an expedited transcript of the February 24, 2006 motions hearing but was informed that such transcript could not be prepared before the March 6, 2006 deadline for the filing of this motion. Should the government's response challenge, or conflict with, counsel's recollection, counsel will address such discrepancies in a reply.

Officer Stevens lacked the reasonable suspicion necessary to conduct a protective frisk of Mr. Doye; and that (3) pursuant to the "plain feel" or "plain touch" doctrine, Officer Stevens lacked the probable cause necessary to search the contents of Mr. Doye's pocket.

On October 11, 2005, the Court ruled that both the stop of the vehicle and the frisk of Mr. Doye were justified. Specifically, the Court found that it was "reasonable for the police officer [sic] to do everything they did, until such time as they reached into Mr. Doye's....pocket" (Tr. 10/11/05 at 40). The only issue before the Court at the motions hearing held on February 24, 2006, therefore, was whether the search of Mr. Doye's pocket was permissible. That search was clearly impermissible and the evidence that flowed therefrom should be suppressed.

### A.   The Search of Mr. Doye's Pocket Overstepped Permissible *Terry* Bounds

Because Officer Stevens did not believe Mr. Doye's pocket contained a weapon, his search and seizure exceeded the permissible scope of a Terry frisk.  In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that, where an officer has reason to believe he is dealing with an armed and dangerous individual, he may conduct a frisk of the outer clothes for weapons. Terry,

4

292 U.S. at 27. Once an officer has determined that the suspect is not armed, however, "that officer exceeds the permissible scope of a... frisk if he continues to search the suspect." United States v. Swann, 149 F.3d 271, 274 (4th Cir. 1998). In Minnesota v. Dickerson, 508 U.S. 366, 377 (1993), the Supreme Court determined that a police officer may seize contraband "detected by a sense of touch during a protective pat-down search so long as the officer is acting within the bounds of Terry *at the moment* when probable cause arises to believe that contraband is present." United States v. Rogers, 129 F.3d 76, 79 (2nd Cir. 1997) (emphasis added). Under Dickerson, that is, if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that authorized by the officer's search for weapons. Dickerson, 508 U.S. at 375-76. On the other hand, a police officer oversteps lawful bounds if the search for contraband continues *after* the officer determines that no weapons are present. Even if probable cause to believe that contraband is present arises at some point thereafter, the seizure itself is unlawful. Rogers, 129 F.3d at 79. The Court in Dickerson found that a police officer overstepped the bounds defined by Terry when he determined that a lump in a defendant's pocket was contraband "only after squeezing, sliding, and otherwise

manipulating the contents of the defendant's pocket, a pocket which the officer *already knew* contained no weapon." Dickerson, 508 U.S. at 378 (emphasis added).

In the instant case, the question for the Court is whether Officer Stevens was acting within the bounds of a lawful pat-down search when probable cause arose to believe that Mr. Doye's pocket contained contraband. Based on the officer's own testimony-testimony which, notably, the Court found to be "extremely credible"-the Court must find that the search of Mr. Doye's pocket, and the resulting seizure, violated the Fourth Amendment.

Officer Stevens' testimony made abundantly clear that, after concluding that Mr. Doye's pocket contained no weapon[2], he nevertheless continued to manipulate that pocket. Indeed, the officer specifically stated that, in order to form an opinion as to the pocket's contents, he had to "slide" and "squeeze" it. After conducting the pat-down, Officer Stevens asked Mr. Doye what was in his pocket-further belying the fact that the contents of the pocket were not, in fact, "immediately apparent." That the officer had to "squeeze" and "slide" the contents of the pocket is entirely consistent with common sense, given the detailed description the officer provided regarding what, exactly, he

---

[2] When questioned by counsel, Officer Stevens stated that he knew there was no gun, no knife, no razor, and no other object that could be used as a weapon in Mr. Doye's pocket.

6

felt. While both the police report and Officer Young's testimony indicated that the pocket contained "large rock-like" bulges (PD 163; Tr. 10/11/05 at 16), Officer Stevens told the Court that he felt "small," "pea-sized," "soft" objects nestled within one or more layers of plastic packaging. As noted above, the officer referred to the object he felt as a "hackey sack." In order to feel the "hackey sack," Officer Stevens acted well outside the scope of <u>Terry</u>–manipulating the contents of the pocket after determining that the pocket contained no gun, knife, razor or other weapon. Whether or not probable cause eventually arose based on the subsequent probing of the pocket is completely irrelevant; by the time such probable cause supposedly arose, the officer had already exceeded the bounds set forth in <u>Terry</u>. See <u>United States v. Ponce</u>, 8 F.3d 989, 999 (5th Cir. 1994)(holding that police officer's removal of defendant's watch pocket was not permissible under <u>Terry</u>; pat-down frisk revealed only "little bump" and, at that point, officer reached bounds marked by <u>Terry</u>. Under <u>Dickerson</u>, the officer's speculation about what "little bump" might be did not justify seizure.)

### B. <u>The Search of Mr. Doye's Pocket was not Supported by Probable Cause</u>

The government is apparently trying to argue that, by the time Officer Stevens placed his hands inside Mr. Doye's pocket,

7

he had probable cause to do so not only based on the feel of the contents of that pocket, but based on additional factors. Specifically, the government asserts that the "hackey sack" feel of the pocket, combined with the officer's experience, the fact that the stop took place in an "open air drug market," and the fact that Mr. Doye did not answer the officer's question, gave Officer Stevens the requisite probable cause to search Mr. Doye's left pants pocket.

In arguing that the search and seizure of Mr. Doye's pocket were justified, the government relies heavily on the D.C. Circuit case of United States v. Ashley, 37 F.3d 678 (D.C. Cir. 1994). While the Ashley court held that "a touch may reveal enough information to establish probable cause," Ashley, 37 F.3d at 681, the case is clearly distinguishable from that at hand. In Ashley, the defendant *consented* to a search which included his upper thigh and groin areas. Following a pat-down search, the officer felt a hard object in the defendant's crotch, ordered the defendant to open his pants and removed crack cocaine from his underwear. The court found that the search was conducted "in a sweeping, patting, probing motion using the flat surface of [the officer's] hands" and that the officer "knew immediately" that the defendant was concealing crack cocaine. Id. at 679-681. In making its ruling, the D.C. Circuit specifically distinguished the facts in Ashley from those in United States v. Gibson, 19

F.3d 1449 (D.C. Cir. 1994)–where it found the search of a defendant's pants pockets impermissible[3]–by stating that

> the present case is quite different. The officer felt the object not in Ashley's pocket, but in his groin area, between his upper thigh and his pocket. The officer testified that he had previously found narcotics in that location on suspects 10-15 times. *Most important*, [the officer] stated–and the district court found–not merely that the object "corresponded to a package of crack, but that he recognized it immediately as crack. *Given these facts and findings*, Gibson does not foreclose a conclusion of "probable cause" in this case.

Ashley, 37 F.3d at 681 (emphasis added).

While the Ashley court held that an officer who felt a hard rock substance during a pat-down search had probable cause for further searching, its opinion relied on the finding that the officer knew immediately that the object in question was crack. That knowledge, in turn, depended in large part on the fact that the object in Ashley was in the defendant's groin area, unlike in the present case. Ashley merely confirmed the dictates of Dickerson, holding as it did that *when a search within the confines of Terry reveals an object immediately apparent as contraband, an officer may legitimately search further.*

In asking the Court to uphold the search of Mr. Doye's pocket, the government is asking the Court to simply ignore the

---

[3] In Gibson, the Court held that an officer's discovery of a "hard, flat, angular object in [the defendant's] left pants pocket did not provide probable cause for further searching." Ashley, 37 F.3d at 681, citing Gibson, 19 F.3d at 1451.

fact that the officer in this case-unlike the officer in Ashley-never stated that he knew immediately that Mr. Doye's pocket contained crack. Unlike the officer in Ashley, Officer Stevens squeezed and slid the contents of the pocket before feeling the supposedly familiar "hackey sack." While the Ashley court cited the officer's experience, noting that he had found narcotics in that particular location on many occasions, it did not hold that that experience alone justified his conduct. If anything, the court found that the officer's *immediate recognition* of the object, when coupled with the fact that the object was *not* in the pocket, but rather in a more revealing location, gave rise to the probable cause required. The government is asking the Court to fly in the face of *both* Dickerson and Ashley by arguing that the latter somehow establishes an independent basis for a full-fledged search.

Given that Officer Stevens' supposed suspicions arose only after he exceeded the scope of Terry, those suspicions cannot be included among the factors to be considered *vis a vis* probable cause. In light of the government's argument, the factors that remain are the officer's experience, the fact that Mr. Doye did not answer the officer's question, and the nature of the neighborhood. Those factors come nowhere near establishing the probable cause required.

     In <u>Rogers</u>, the Second Circuit held that the officer's

> fair certainty that what he felt in [the defendant's] pocket], coupled with [the defendant's] suspicious conduct, would warrant a reasonable person to believe that drugs may be present, even without excluding the hypothesis that the contents could...be something else altogether.

<u>Rogers</u>, 129 F.3d at 80. While noting that the defendant was "being quite evasive," <u>Id</u>. at 78, the Court placed its emphasis on the fact that the "incriminating character of the object...was immediately apparent." The Court specifically held that, while the officer "manipulated" the object in question for a few minutes, he did so because he had not yet excluded the possibility that the pocket contained a weapon. In the instant case, not only did Officer Stevens manipulate Mr. Doye's pocket well after concluding that it contained no weapon, but he testified that Mr. Doye had been cooperative, rather than evasive. Indeed, both Officer Stevens and Officer Young stated that Mr. Doye complied with all their orders and never tried to walk away or run.

     By relying on Mr. Doye's silence in response to police questioning, the government is essentially trying to use Mr. Doye's exercise of a constitutional right against him.  In <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984), the Supreme Court stated in no uncertain terms that, following a traffic stop, detainees are not obliged to respond to questions designed to dispel or confirm police suspicions.  Referring to <u>Terry</u> stops,

the Court held that

> [an] officer may ask the detainee a number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide probable cause to arrest him, he must then be released.

Berkemer, 468 U.S. at 439-40.

This circuit has relied on Berkemer in holding that failure to respond to police questions following a Terry stop cannot furnish the grounds for further detention. See e.g., United States v. Brown, 334 F.3d 1161, 1179 (D.C. Cir. 2003)(Rogers, J, *dissenting*)("The court does not embrace this part of the government's argument, for Brown could 'not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to...answer does not, without more, furnish those grounds.'") In the Brown case, the D.C. Circuit held that, under a totality of the circumstances approach, the officers had probable cause to search the trunk of a vehicle. The factors the court considered were (1) the fact that the area was a high crime neighborhood; (2) the fact that officers arrived at the scene following a report for gunshots in the area; (3) the suspicious behavior of the man who got out of the car;(4) the furtive and evasive gestures of the passengers of the vehicle; (5) the fact that the stop involved individuals still located within a vehicle; and (6) the fact that the car in question had tinted

windows. As Judge Rogers noted in her dissent, "the court properly [did] not rely on the failure of the occupants to respond to the officer's knock on the window." Brown, 334 F.3d at 1179. Just as the Circuit did in Brown, the Court in this case should flatly reject the government's argument that Mr. Doye's silence should somehow be used as a factor against him. Notably, the search in Brown involved a car, rather than an individual. In the present case, Mr. Doye-the individual whose pocket was searched-made none of the furtive movements or evasive gestures made by the occupants of the vehicle searched in Brown.

As the Court may consider neither Mr. Doye's silence nor the officer's belief-obtained in violation of Terry-concerning the contents of his pocket, all that remains for the Court to consider in its "totality of the circumstances" calculus is the fact that the search in this case occurred in a "high crime" area. Obviously, an individual's presence in such an area, standing alone, is not enough to support probable cause or reasonable suspicion. See, e.g., Illinois v. Wardlow, 528 U.S.119 (2000). While the Court found that the "punched door lock," as well as the passengers' gestures and the car's presence in a high crime area justified the initial stop of the vehicle, such factors came nowhere near establishing probable cause for Mr. Doye's eventual arrest.

**CONCLUSION**

For the reasons set forth above, as well as for any others the Court may deem just and reasonable, Mr. Doye asks the Court to grant his motion to suppress evidence. The warrantless search of Mr. Doye's pocket, and the subsequent seizure of its contents, were not supported by probable cause or any other exception to the warrant requirement. Because Officer Stevens acted outside the bounds of <u>Terry</u> in manipulating Mr. Doye's pocket, the suspicions that eventually arose concerning the contents of that pocket are irrelevant. Furthermore, neither the fact that Mr. Doye was silent in response to police questioning nor the fact that the traffic stop at issue took place in a high crime area suffice to furnish the probable cause required. The crack cocaine allegedly obtained from Mr. Doye's pocket should be suppressed as the tainted fruit of an illegal search.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C.  20004
(202)  208-7500